IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| **WENDY TIPPITT, individually and as administrator of the estate of Timothy Michael Randall,** § § § § § **Plaintiff,** § § **v.** § § **SHANE IVERSON, UNKNOWN OFFICER, & RUSK COUNTY,** § § **Defendants.** | **CIVIL ACTION NO. 6:23-CV-00515-JDK-JDL** |

**REPORT AND RECOMMENDATION OF**
**UNITED STATES MAGISTRATE JUDGE**

Plaintiff Wendy Tippitt, individually and as administrator of the estate of Timothy Michael Randall ("Decedent"), filed this civil action against Defendants Shane Iverson, Unknown Officer, and Rusk County (collectively "Defendants") pursuant to 42 U.S.C. § 1983, alleging violations of Decedent's constitutional rights during a traffic stop which resulted in Decedent's death. The case was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case. Before the court is Defendant Iverson's motion to dismiss (Doc. No. 11) filed on January 3, 2024. Plaintiff filed a response (Doc. No. 14) to which Defendant Iverson did not file a reply. For the reasons set forth herein, the court **RECOMMENDS** that Defendant Iverson's motion (Doc. No. 11) be **GRANTED-IN-PART** and **DENIED-IN-PART** as set forth herein.

1

# BACKGROUND

## I. Plaintiff's Complaint

Plaintiff's complaint alleges that on or about September 14, 2022, Decedent Timothy Randall was pulled over by Sergeant Shane Iverson with the Rusk County Sheriff's Department for not fully stopping at a flashing red stop sign. (Doc. No. 1, at ¶ 12.) Plaintiff states that upon being pulled over, Decedent immediately called Plaintiff, his mother, because he was concerned that his temporary license plate from Oklahoma was expired. *Id.* at ¶ 13. Plaintiff states that she informed her son that she was only three to five minutes away and would give him a ride home if his vehicle was confiscated. *Id.* at ¶ 14. Plaintiff alleges that at some point during the traffic stop, Defendant Iverson ordered Decedent out of the vehicle "without any probable cause whatsoever." *Id.* at ¶ 16. Plaintiff alleges that Defendant Iverson then "illegally pulled [Decedent] out of his vehicle to which [Decedent] verbally protested." *Id.* at ¶ 17. Plaintiff further alleges that "[w]hile illegally trying to handcuff [Decedent] without warning or justification, defendant Iverson then assaulted [Decedent] by shooting [him] when [Decedent] posed absolutely no threat to defendant Iverson, was unarmed and had not engaged in any criminal conduct." *Id.* Defendant Iverson shot Decedent in the chest under the arm. *Id.* at ¶ 19. Decedent died at the scene of the shooting. *Id.*

Plaintiff sues Defendants Iverson and Unknown Officer under 42 U.S.C. § 1983 for unlawful arrest and excessive force, and under Texas law for assault and battery, intentional infliction of emotional distress, wrongful death, and survivorship. (Doc. No. 1.) Plaintiff seeks relief in the form of unspecified compensatory and punitive damages, attorney's fees, interest and costs of suit, and other such relief as the court deems just and equitable. *Id*. at 9.

## II.      Defendant Iverson's Motion to Dismiss

Defendant Iverson moves to dismiss Plaintiff's claim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Doc. No. 11). Defendant Iverson contends that the complaint fails to allege facts showing that Defendant Iverson committed a constitutional violation which violated clearly established law; thus, Defendant Iverson claims that he is entitled to federal qualified immunity. *Id.* at 5. Defendant Iverson also asserts that he is entitled to official immunity under Texas law. *Id.*

In her response to the motion to dismiss, Plaintiff argues that Defendant Iverson violated Decedent's Fourth Amendment right against unlawful seizures. (Doc. No. 14, at 5.) First, Plaintiff alleges that Defendant Iverson waived his right to qualified immunity when he physically removed Decedent from his car when there was no probable cause to believe Decedent had a weapon or was otherwise engaged in criminal conduct. *Id.* Second, Plaintiff asserts that under clearly established law, the Fourth Amendment does not authorize deadly force unless a suspect poses an immediate threat to officer safety. *Id.* Plaintiff alleges that Decedent was not armed and posed no immediate threat to Defendant Iverson at the time of the shooting. *Id.* Therefore, Plaintiff contends that Defendant Iverson is not entitled to qualified immunity or official immunity. *Id.* Further, Plaintiff argues that dismissing this case based on qualified immunity or official immunity would be premature, given that Rusk County and the Texas Rangers have refused to disclose their investigative reports of the shooting to Plaintiff. *Id.*

## LEGAL STANDARD

When a defendant files a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the trial court must assess whether a complaint states a plausible claim for relief. *See Raj v. Louisiana State Univ.*, 714 F.3d 322, 329–30 (5th Cir. 2013) (citing *Bass v.*

*Stryker Corp.*, 669 F.3d 501, 506 (5th Cir. 2012)). Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). The Supreme court clarified the standards that apply in a motion to dismiss for failure to state a claim in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 555. The court does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A complaint may be dismissed if a plaintiff fails to "nudge [his] claims across the line from conceivable to plausible." *Id.*

The distinction between merely being possible and plausible was reiterated by the court in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Federal Rule of Civil Procedure 8(a) does not require "detailed factual allegations[,] but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice; nor does a complaint which provides only "naked assertions" that are "devoid of further factual enhancement." *Id.* Courts need not accept legal conclusions as true, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, are not sufficient. *Id.*

A plaintiff meets this standard when he "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint may be dismissed if a plaintiff fails to "nudge [his] claims . . . across the line from conceivable to plausible," or if the complaint pleads facts merely consistent with or creating a suspicion of the defendant's liability. *Id.*; *see also Rios v. City of Del Rio*, 444 F.3d 417, 421 (5th Cir. 2006).

4

## DISCUSSION

Defendant Iverson moves to dismiss Plaintiff's complaint for failure to state a claim for relief under § 1983, arguing that Plaintiff has not alleged facts showing that Defendant Iverson is not entitled to qualified immunity. In the context of a Rule 12(b)(6) motion to dismiss, the court must determine whether plaintiff has pleaded "facts which, if true, would overcome the defense of qualified immunity." *Carswell v. Camp* 54 F.4th 307, 311 (5th Cir. 2022) (quoting *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)). Public officials are entitled to qualified immunity from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Jennings v. Patton*, 644 F.3d 297, 300 (5th Cir. 2011) (quoting *Pearson v. Callahan*, 555 U.S. 223 (2009)). As discussed, Defendant Iverson moves for qualified immunity on Plaintiff's constitutional claims asserted under the Fourth Amendment—the alleged claims of unlawful detention/arrest and excessive use of force.

### I. False Detention/False Arrest Claim

Defendant argues that Plaintiff has not stated a claim with respect to a Fourth Amendment violation for unlawful detention because the detention alleged was reasonable. (Doc. No. 11, at 6.) Plaintiff responds that the seizure alleged was unlawful because Defendant Iverson pulled Decedent out of his vehicle for a traffic stop when there was no probable cause to do so. (Doc. No. 14, at 4–5.)

As an initial matter, the court notes that Defendant Iverson's motion relies largely on an "absence of factual pleadings" argument—namely that Plaintiff has not alleged facts regarding the reasonableness of Defendant Iverson's actions. *See, e.g.*, Doc. No. 11, at 6, 7. But such an argument fails to appreciate that the true party in interest, Timothy Randall, is deceased. Practically

5

speaking, because Mr. Randall did not survive the arrest and use of force, he was not able to communicate with his lawyers regarding the circumstances of the arrest and use of force prior to the filing of the complaint. Furthermore, the only alleged witness to the incident was Defendant Iverson.[1] As Plaintiff's response points out, Defendant Rusk County has refused to release any body-cam or dash-cam footage of the incident, and the Texas Rangers, who conducted an investigation of the incident, have also refused to disclose their report. (Doc. No. 14, at 5.) Thus, aware that Decedent is unable to share his version of the facts, Defendants have thus far opted to withhold the only objective evidence of what actually occurred. This factual scenario further imbues the court's need to construe the factual pleadings in Plaintiff's favor at the pleading stage. *See Allen v. Hays*, 65 F.4th 736, 746 (5th Cir. 2023) (finding that the district court erred in construing the facts in favor of the defendants under Rule 12(b)(6) where plaintiff was deceased).

    a. <u>Alleged Constitutional Violation for Unlawful Detention</u>

In the complaint, Plaintiff states that she is asserting § 1983 claims for "excessive force, false detention, and false arrest." (Doc. No. 1, at 4.) However, the complaint refers numerous times to the "arrest" and "detention" of Decedent without specifying, based upon the facts alleged, whether Plaintiff intended to assert a claim related to the initial traffic stop as well as a claim pertaining to the alleged arrest of Decedent. *See, e.g.*, Doc. No. 1, at ¶¶ 22, 23. Plaintiff alleges that "[a]t some time during the traffic stop defendant Iverson, without any probable cause whatsoever, ordered Randall out of his vehicle." *Id.* at ¶ 16. This allegation is consistent with the argument Plaintiff presents in the response to the motion to dismiss, and thus, the court understands the asserted claim to be based upon the alleged seizure of removing Decedent from the vehicle and

---

[1] Although the complaint alleges violations by both Defendant Iverson and an Unknown Officer, it is unclear from the complaint what role the Unknown Officer played in the arrest and use of force. In fact, the complaint does not even allege that the Unknown Officer was present during the arrest and use of force. *See* Doc. No. 1.

handcuffing him, rather than the initial stop. As discussed below, to the extent that Plaintiff has intended to allege a claim based upon the initial traffic stop, such a claim has not been sufficiently pleaded.

Routine stops for violating traffic laws, while not technically criminal behavior, are evaluated under *Terry*. The judicial inquiry "is a dual one[,] whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio*, 392 U.S. 1, 20 (1968). Here, Plaintiff has alleged no specific facts with respect to the initial stop other than alleging that Decedent was pulled over for not fully stopping at a flashing red stop sign, and that he called his mother because he was worried that his temporary license plate from Oklahoma was expired. (Doc. No. 1, at ¶¶ 12, 13.) These allegations are too conclusory to state a claim for unlawful detention based upon the initial stop. Plaintiff alleges no facts with respect to whether Defendant Iverson's decision to pull Decedent over was justified. Thus, to the extent Plaintiff has attempted to assert a claim for unlawful detention based upon the traffic stop, it should be dismissed for failure to state a claim. *See Allen*, 65 F.4th at 746 ("[w]ithout a specific allegation that the traffic stop was without grounds, the claim of illegal detention is conclusory.").

    b. <u>Alleged Constitutional Violation for Unlawful Arrest</u>

Turning to Plaintiff's claim regarding unlawful arrest, an arrest is unlawful if the officer did not have probable cause. *Allen*, 65 F.4th at 746; *see also Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007) ("in order to prevail in a § 1983 claim for false arrest, a plaintiff must show that he was arrested without probable cause in violation of the Fourth Amendment."); *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001) (internal quotation marks omitted) ("The constitutional tort of false arrest . . . require[s] a showing of no probable cause."). A seizure is an arrest if "a reasonable

person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." *Turner v. Lieutenant Driver*, 848 F.3d 678, 692–93 (5th Cir. 2017) (quoting *Carroll v. Ellington*, 800 F.3d 154, 170 (5th Cir. 2015)). But "[u]sing some force on a suspect, pointing a weapon at a suspect, ordering a suspect to lie on the ground, and handcuffing a suspect . . . do not automatically convert an investigatory detention into an arrest requiring probable cause." *Id.* (quoting *United States v. Sanders*, 994 F.2d 200, 206 (5th Cir. 1993)).

Here, Plaintiff alleges that this was a routine traffic stop, in which Decedent was unarmed, and that "[a]t some time during the traffic stop defendant Iverson, without any probable cause whatsoever, ordered Randall out of his vehicle." (Doc. No. 1, at ¶ 16.) Plaintiff further alleges that "[a]t some point after ordering plaintiff out of his vehicle, defendant Iverson then illegally pulled plaintiff out of his vehicle to which plaintiff verbally protested." *Id.* at ¶ 17. Once out of the vehicle, Plaintiff alleges that Defendant Iverson attempted to handcuff Decedent. *Id.* at ¶ 18. Because Plaintiff alleges that Decedent was pulled out of the vehicle by Defendant Iverson and that Iverson attempted to handcuff him thereafter, Decedent would have understood this conduct to constitute a restraint on freedom akin to a formal arrest. *See Turner*, 848 F.3d at 692–93.

Plaintiff's allegations must also be sufficient to show that the arrest lacked probable cause. *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004). An officer may conduct a warrantless arrest based on probable cause that an individual has committed even a minor offense, including misdemeanors. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). Here, Plaintiff alleges that Decedent "was pulled over" by Defendant Iverson "for a traffic violation for not fully stopping at a flashing red stop sign." (Doc. No. 1, at ¶ 12.) Defendant does not argue that Decedent would have been charged with any other offense had he not died during the arrest. Therefore, the court

must assume, based upon the allegations, that the only justification for an arrest was the alleged initial traffic violation for failing to fully stop at a stop sign. But Plaintiff's allegations do not concede that Decedent committed the violation for which he was allegedly pulled over, or even that there was a probability that he was likely engaged in criminal activity.[2] *See Illinois v. Gates*, 462 U.S. 213, 244 n. 13 (1983) ("probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."). Rather, the pleaded allegations plainly state that Decedent "had not engaged in any criminal conduct." (Doc. No. 1, at ¶ 19.) In other words, accepting Plaintiff's version of the facts as true at the pleading stage, there was no probable cause for an arrest based upon the alleged traffic violation or another criminal offense. There are no other facts alleged that may have provided probable cause for an arrest. Indeed, Plaintiff alleges that Decedent was unarmed and posed no threat to Defendant Iverson. *Id.* at ¶¶ 15, 17. At the pleading stage, the court must construe the allegations regarding a lack of probable cause in Plaintiff's favor, taking them as true. *Allen*, 65 F.4th at 747 ("we construe all pleadings in favor of the plaintiffs.").

The Fifth Circuit recently found similar allegations to be sufficient to state a claim for unlawful arrest. *Allen*, 65 F.4th at 745–46. *Allen* involved an individual who was stopped for a routine traffic stop for a broken taillight and for running a stop sign. *Id*. During the stop, Allen was reaching for his wallet and was instructed to stop moving and remove his foot from the gas pedal. *Id.* at 742. Thereafter, Allen was shot five times by the officer at close range, after which his body fell onto the gas pedal, and he involuntarily slammed the vehicle into a tree. *Id.* The officer then dragged Allen out of the vehicle and handcuffed him. *Id.* Allen died at the scene. *Id.* Like the instant case, because Allen was deceased, it was unclear what, if anything, he would have been

---

[2] The allegations also do not affirmatively state that Decedent's temporary out of state license plate was expired, only that he was concerned that it might be expired and called his mother. *Id.* at ¶ 13.

9

charged with had he lived, other than the alleged initial traffic violation. The Fifth Circuit did not expressly consider whether running the stop sign, as stated by plaintiff on appeal, would have provided probable cause for the officer's eventual arrest. Instead, the Fifth Circuit focused on what occurred after the initial stop, accepting plaintiff's pleaded facts that "Allen never disobeyed [the officer's] instructions, and driving into the tree was caused by 'an involuntary reflex' that occurred '[f]ollowing the impact from the gunshots.'" *Id.* at 746. The Fifth Circuit further noted that plaintiffs had "alleged that nothing supports the contention that [the officer] was reasonable in believing he saw a gun" and concluded that "[i]n the motion to dismiss stage, this is sufficient to allege that [the officer's] handcuffing of the injured Allen was an arrest without probable cause." *Id.* (internal citations omitted).

In sum, because Plaintiff was alleged to be unarmed, did not pose a threat to Defendant Iverson, and had not engaged in any criminal conduct, the allegations that Defendant Iverson then forcibly pulled Decedent out of the car and employed deadly force while handcuffing him are sufficient to allege an arrest without probable cause.

    c.  Clearly Established Law

To survive a motion to dismiss, however, Plaintiff must also show that Defendant Iverson's actions clearly violated the constitution. *Harlow v. Fitzgerald*, 457 U.S. 800, 800 (1982). Courts should avoid defining clearly established law "at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011); *see also Hanks v. Rogers*, 853 F.3d 738, 747 (5th Cir. 2017) ("[C]learly established law must be 'particularized' to the facts of the case".)

As discussed above, the facts alleged in this case are similar to the recent Fifth Circuit decision in *Allen*. *Allen*, however, was decided after the incident in this case occurred and therefore cannot have provided notice to Defendant Iverson. But the Fifth Circuit relied on two cases that

10

preceded the incident in this case, *Sanders*[3] and *Carroll*,[4] as precedents setting forth clearly established law as applied to the facts of *Allen*. *See Allen,* 65 F.4th, at 746–47 ("[t]aking as true that [the officer] had no reason to believe Allen was armed and that [the officer] knew Allen was seriously injured and likely could not move, a police officer would know, under these precedents [*Sanders* and *Carroll*], that to handcuff Allen was an arrest without probable cause under clearly established law.") Because *Sanders* and *Carroll* predate the alleged unlawful arrest in this case, they would provide a basis to put Defendant Iverson on notice that his conduct of handcuffing Decedent without probable cause violated clearly established law. *See Jennings*, 644 F.3d at 300.

Moreover, in *Deville*, the Fifth Circuit concluded that an officer was not entitled to qualified immunity on plaintiff's § 1983 false arrest claim under similar facts. *Deville v. Marcantel*, 567 F.3d 156, 161–62 (5th Cir. 2009). Deville was pulled over for speeding and charged with failure to sign a ticket and resisting arrest, all of which she disputed. *Id.* Deville was then grabbed by the officer through an open window of the vehicle and pulled out of the vehicle. *Id.* at 162. She was thrown up against the vehicle, sustaining a blow to her abdomen, and was subsequently placed in handcuffs and taken to the Sheriff's office in a police cruiser. *Id.* The Fifth Circuit concluded that "because there are genuine issues as to the material facts of whether Deville was detected to have been speeding, whether she was asked sign a traffic ticket and whether she

---

[3] In *Sanders,* the Fifth Circuit held that "using some force on a suspect, pointing a weapon at a suspect, ordering a suspect to lie on the ground, and handcuffing a suspect—whether singly or in combination—do not automatically convert an investigatory detention into an arrest requiring probable cause" but cautioned that its holding should not to be interpreted as "meaning that the police are automatically authorized to employ these procedures in every investigatory detention." *Sanders*, 994 F.2d at 206. The court emphasized the relevant inquiry is one of reasonableness under the circumstances. *Id.*

[4] In *Carroll*, the Fifth Circuit emphasized the well-established precedent that "[a] person has been seized within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Carroll*, 800 F.3d at 170 (citing *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)) (internal quotations omitted).

was validly exercising her established right under Louisiana law to resist an unlawful arrest, we conclude that [the officer] is not entitled to qualified immunity." *Id.* at 166.

Here, Plaintiff alleges that Decedent was pulled over for failing to fully stop at a stop sign, that Decedent was unarmed and had not engaged in any criminal conduct, that he did not pose any threat to Defendant Iverson, and that any resistance was merely verbal protests after the alleged illegal seizure had already begun. (Doc. No. 1, at ¶¶ 15, 17, 18.) The law was clear from *Deville* and the cases cited by *Allen* that the forceable removal of an individual from their vehicle, additional use of force, and subsequent handcuffing resulting from a routine traffic stop can establish an unlawful arrest without probable cause. As such, these cases clearly proscribed Defendant Iverson's alleged actions of arresting Decedent by forcibly removing him from his vehicle, handcuffing him, and deploying deadly force when he was alleged to have been pulled over for a minor traffic violation and had not been engaged in any criminal conduct. Taking the allegations as true, Defendant Iverson is not entitled to qualified immunity on Plaintiff's unlawful arrest claim.

## II. Excessive Force Claim

### a. Alleged Constitutional Violation for Excessive Force

Defendant also moves for qualified immunity on Plaintiff's claim for excessive use of force. (Doc. No. 11, at 6–9.) "The Fourth Amendment guarantees the right to be free from unreasonable searches and seizures." *Peterson v. City of Ft. Worth*, 588 F.3d 834, 844 (5th Cir. 2009). Specifically, it protects the right to be free from excessive force during a seizure. *Joseph on behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 322 (5th Cir. 2020) (citing *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012)); *see also Tucker v. City of Shreveport*, 998 F.3d 165, 171 (5th Cir. 2021) ("[f]or purposes of liability under 42 U.S.C. § 1983, excessive force

12

claims arising from an arrest or investigatory stop invoke the protection provided by the Fourth Amendment of the United States Constitution against 'unreasonable seizure.'"). Although an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it, *Graham v. Connor*, 490 U.S. 386, 396 (1989), a violation of this right occurs when a seized person suffers an injury which results directly and only from a clearly excessive and objectively unreasonable use of force. *Joseph*, 981 F.3d at 322; *see also Windham v. Harris Cnty.*, 875 F.3d 229, 242 (5th Cir. 2017).

"To prevail on an excessive force claim, a plaintiff must show '(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable.'" *Windham*, 875 F.3d at 242 (quoting *Hamilton v. Kindred*, 845 F.3d 659, 662 (5th Cir. 2017)). Determining whether force was excessive or unreasonable is a necessarily fact-intensive and case-specific inquiry, and the test for reasonableness is not capable of precise definition or mechanical application. *Joseph*, 981 F.3d at 322. The analysis "requires a careful balancing of the intrusion upon the individual's interests with the countervailing governmental interests at stake." *Tucker*, 998 F.3d at 171.

Here, Plaintiff alleges an injury—namely that the alleged seizure resulted in Decedent's death when Defendant Iverson shot Decedent in the chest under the arm while in the process of handcuffing him. (Doc. No. 1, at ¶¶ 18, 19.) Further, Plaintiff alleges that Decedent's death resulted from use of force that was excessive to the need. Specifically, Plaintiff alleges that Decedent was pulled over for not fully stopping at a flashing red stop sign, and that during the stop, without probable cause, Decedent was ordered out of his vehicle. *Id.* at ¶¶ 12, 16. Plaintiff alleges that Decedent only "verbally protested," and that "without warning or justification" Defendant Iverson shot and killed Decedent while handcuffing him, even though Decedent was

13

not armed, did not pose a threat to Defendant Iverson, and was not engaged in any criminal conduct. *Id.* at ¶¶ 15–19. Taking these facts as true allows for a reasonable inference that the use of deadly force was objectively unreasonable. *Id.* As such, Plaintiff has stated a claim for violation of the Fourth Amendment.

    b. Clearly Established Law

As noted above, Plaintiff must also show that Defendant Iverson violated clearly established law when he shot Decedent while attempting to handcuff him. *See Harlow*, 457 U.S. at 800. Under the Fourth Amendment, an officer's right to arrest or detain necessarily encompasses the right to use "some degree of physical coercion or threat" to enforce it. *Graham*, 490 U.S. at 396. But claims of excessive force necessarily "depend[ ] on the facts and circumstances of each particular case." *Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012). The amount of force an officer can use depends on (1) the severity of the crime at issue, (2) whether the suspect poses a threat to officer safety, and (3) whether the suspect attempts to resist arrest or flee. *Bush v. Strain*, 513 F.3d 492 (5th Cir. 2008) (citing *Graham*, 490 U.S. at 396). For example, the Fifth Circuit has held that "it was clearly established that an officer may not use force on a suspect who is complying with his commands." *Bagley v. Guillen*, No. 22-20644, 2024 WL 107888, at *3 (5th Cir. Jan. 10, 2024) (citing *Darden v. City of Fort Worth*, 880 F.3d 722, 728–30 (5th Cir. 2018), *Newman*, 703 F.3d at 761–64)). Similarly, "[i]t has long been clearly established that, absent any other justification for the use of force, it is unreasonable for a police officer to use deadly force against a fleeing [suspect] who does not pose a sufficient threat of harm to the officer or others." *Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 418 (5th Cir. 2009) (citing *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)).

In *Deville*, as discussed above, the Fifth Circuit determined that the defendant officers were not entitled to qualified immunity for breaking the plaintiff's car window and "dragg[ing]" her out of her car when (1) the plaintiff was only stopped for a minor traffic violation, (2) she evinced no intent to flee or threaten the officers' safety, and (3) her resistance to the officer's commands was "at most, passive." *Deville*, 567 F.3d at 167–69.

Similarly, in *Hanks v. Rogers*, the Fifth Circuit held that the defendant officer was not entitled to qualified immunity for hitting the plaintiff in the back of the neck during a routine traffic stop when (1) the plaintiff was pulled over for a minor traffic violation (going 20 miles *under* the speed limit), (2) the plaintiff posed no immediate threat of harm or risk of flight, and (3) he had only engaged in "passive resistance." 853 F.3d 738, 747–48 (5th Cir. 2017).

Here, like in *Deville* and *Hanks*, Plaintiff alleges that (1) Decedent was pulled over for a minor traffic violation—failing to fully stop at a flashing red stop sign; (2) that he was unarmed, had not engaged in any criminal conduct, and did not pose a threat to officer safety; and (3) that he only "verbally protested" to being physically removed from his car. (Doc. No. 1, at ¶¶ 12–17.) Then, while trying to handcuff Decedent, and "without warning or justification," Defendant Iverson shot and killed Decedent. *Id.* at ¶18.

Taking these allegations as true, Plaintiff has sufficiently alleged that deadly force was not authorized at the time of the shooting because Decedent did not pose a threat of physical harm. *See Deville*, 567 F.3d at 167–69; *see also Hanks*, 853 F.3d at 747–48. It was well established that "deadly force violates the Fourth Amendment unless 'the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others.'" *See, e.g., Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 488 (5th Cir. 2001) (quoting *Garner*, 471 U.S. at 11). Further, given that the cases discussed herein predate the alleged use of force in this

15

case, Defendant Iverson was on notice that his conduct as alleged in the complaint violated clearly established law. *See Jennings*, 644 F.3d at 300.

Accordingly, because the complaint plausibly alleges that Defendant Iverson is not entitled to qualified immunity, the court recommends that Plaintiff's claims against Defendant Iverson proceed past the pleading stage. *See* Fed. R. Civ. P. 12(b)(6); *Carswell,* 54 F.4th at 312 (holding that when a plaintiff's pleadings are sufficient to overcome qualified immunity, the court must deny a motion to dismiss, and the defendant can either: (1) immediately appeal the court's decision or (2) request limited discovery into the factual disputes relevant to the qualified immunity defense and reassert qualified immunity in a motion for summary judgment). Further, as noted above, Plaintiff contends that Defendant Rusk County has refused to release any body-cam or dash-cam footage of the incident, and that the Texas Rangers, who conducted an investigation of the incident, have also refused to disclose their report. (Doc. No. 14, at 5.) The production of this material will allow the court to more fully consider the issue of qualified immunity on summary judgment.

### III. State Law Claims

Defendant Iverson also moves to dismiss Plaintiff's state law claims for assault, battery, and intentional infliction of emotional distress on the basis of official immunity. (Doc. No. 11.) Official immunity is an affirmative defense to civil liability under Texas law. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994). "Government employees are entitled to official immunity from suit arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority." *Id.* (citations omitted). Under Texas law, a police officer's decision to arrest a suspect, including by force, is a discretionary act within the scope of his or her authority as peace officer. *See id.* (collecting cases). An official acts in "good faith" if "any reasonably prudent officer could have believed that the conduct was

16

consistent with the plaintiff's rights." *Cantu v. Rocha*, 77 F.3d 795, 808 (5th Cir. 1996). Texas official immunity and federal qualified immunity are substantially the same. *Id.*; *see also Wren v. Towe*, 130 F.3d 1154 (5th Cir. 1997). The main difference is that Texas official immunity for nonconstitutional torts does not require that the officer's conduct violated clearly established law. *See Chambers*, 883 S.W.2d at 657. Rather, "Texas' test focuses solely on the objective legal reasonableness of the officer's conduct." *Cantu*, 77 F.3d at 809 (citations omitted).

Here, the court has already determined that when taken as true, Plaintiff's complaint shows that Defendant Iverson would not be entitled to federal qualified immunity for unlawful arrest and excessive force. Further, Plaintiff's state law claims for assault, battery, and intentional infliction of emotional distress are predicated on the same acts that form the basis of Plaintiff's federal law claims for unlawful arrest and excessive force. Accordingly, Plaintiff has also pled sufficient facts to show that Defendant Iverson would not be entitled to official immunity under Texas law for assault, battery, or intentional infliction of emotional distress. *See Cantu*, 77 F.3d at 808 (stating Texas official immunity and Federal qualified immunity are "substantially the same"). Therefore, Defendant Iverson's motion to dismiss on the basis of official immunity should also be denied.

## CONCLUSION

For the reasons stated above, the court **RECOMMENDS** that Defendant Iverson's motion to dismiss (Doc. No. 11) be **GRANTED-IN-PART** and **DENIED-IN-PART**. Specifically, the court **RECOMMENDS** that Defendant Iverson's motion be **GRANTED** as to Plaintiff's § 1983 claim for unlawful detention, and that that claim be dismissed with prejudice, and **DENIED** as to Plaintiff's § 1983 claims for unlawful arrest and excessive use of force.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report. A

party's failure to file written objections to the findings, conclusions, and recommendations contained in this Report within 14 days after service shall bar that party from *de novo* review by the district judge of those findings, conclusions, and recommendations and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc), *superseded on other grounds by statute*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 2nd day of February, 2024.**

*[signature]*
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE