IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| WENDY TIPPITT, AS THE ADMINISTRATOR OF THE ESTATE OF TIMOTHY MICHAEL RANDALL; | § § § § § § § § § § § § § | CIVIL ACTION NO. 6:23-CV-00515-JDK |
| **Plaintiff,** | | |
| v. | | |
| **SERGEANT SHANE IVERSEN,** | | |
| **Defendant.** | | |

**REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE**

Before the court is Defendant Shane Iversen's motion for summary judgment on the issue of qualified immunity. (Doc. No. 65.) Plaintiff Wendy Tippitt as the Administrator of the Estate of Timothy Randall ("Plaintiff") filed a response (Doc. No. 68), to which Defendant filed a reply (Doc. No. 69), and Plaintiff filed a sur-reply (Doc. No. 70). For the reasons stated herein, the court **RECOMMENDS** that Defendant's motion for summary judgment (Doc. No. 65) be **DENIED**.

**BACKGROUND**

Plaintiff filed the instant action on October 20, 2023, alleging violations of 42 U.S.C. § 1983 against Defendants Sergeant Shane Iversen and Rusk County, Texas. (Doc. No. 1.) Thereafter, both Defendants brought motions to dismiss. (Doc. Nos. 4, 11.) On February 27, 2024, Defendant Rusk County's motion to dismiss was granted and Rusk County was dismissed from this case. (Doc. No. 17.) On the same date, the court granted-in-part and denied-in-part Defendant Shane Iversen's motion to dismiss on grounds of qualified immunity. (Doc. No. 18.) Specifically, the motion was granted as to Plaintiff's claims for unlawful detention and denied as to Plaintiff's

1

claims for unlawful arrest and excessive use of force. *Id.* Thereafter, this case proceeded into discovery and the dash camera footage of the incident in question was produced in this matter. In consideration of the video footage, the court denied Defendant's motion for a protective order (Doc. No. 44) and limited discovery in this case to the issue of qualified immunity (Doc. No. 43.) Thereafter, discovery on the issue of qualified immunity began and Plaintiff filed two amended complaints (Doc. Nos. 50, 62), the latter of which is the live pleading in this matter.

## I. Plaintiff's Amended Complaint

Plaintiff's amended complaint details the incident from which this case arises. (Doc. No. 62.) On September 14, 2022, Timothy Randall ("Decedent"), was pulled over by Defendant Iversen for a traffic violation for not fully stopping at a flashing red stop sign. *Id.* at ¶ 11. Plaintiff alleges that after receiving the dashcam video (which was not available at the filing of the original complaint), it was revealed that Defendant Iversen's police vehicle was too far away from the alleged flashing red stop sign to observe the intersection and whether Decedent failed to stop at the stop sign. *Id.* at ¶ 12. Plaintiff states that upon being pulled over, Decedent immediately called Plaintiff, his mother, because he was concerned that his temporary license plate from Oklahoma was expired. *Id.* at ¶ 14. Plaintiff states that she informed her son that she was only three to five minutes away and would give him a ride home if his vehicle was confiscated. *Id.* at ¶ 15. Plaintiff alleges that at no time during the stop was Randall armed with a weapon. *Id.* at ¶ 16. Plaintiff alleges that at some point during the traffic stop, Defendant Iversen ordered Decedent out of the vehicle "without any probable cause whatsoever." *Id.* at ¶ 17. Thereafter, Plaintiff alleges that Defendant Iversen performed an illegal body search of Decedent and put him in a "full-nelson" headlock. *Id.* at ¶ 18. Plaintiff alleges that Defendant Iversen proceeded to assault Decedent by throwing him to the ground and when Decedent tried to get up and get away from Defendant

Iversen, Defendant Iversen assaulted Decedent a second time by grabbing him and throwing him to the ground. *Id.* at ¶¶ 19, 20. "Then, as [Decedent] was trying to get away from Iversen's illegal assault, without warning or justification, Iversen then killed [Decedent] by shooting him when he posed absolutely no threat to Iversen, was unarmed and had not engaged in any criminal conduct." *Id.* at ¶ 21. Decedent was shot in the chest under the arm by Defendant Iversen and died at the scene of the shooting. *Id.* at ¶ 22. Based on these allegations, Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 for violation of the Fourth Amendment for excessive use of force, unlawful detention, and false arrest. *Id.* at 4–5. Plaintiff additionally states state law claims for assault, battery, intentional infliction of emotional distress, and wrongful death. *Id.* at 5–6.

## II.     Defendant's Answer

Defendant filed an answer denying the allegations and asserting the affirmative defense of qualified immunity. (Doc. No. 63).

## III.    Defendants' Summary Judgment Evidence

Defendant now moves the court for summary judgment on grounds of qualified immunity. In support of their motion for summary judgment, Defendant submits the October 14, 2024 deposition of Sergeant Shane Iversen (Doc. No. 66-1); Defendant's in-car video; the Texas Ranger Interview of Defendant; the Rusk County Sheriff's Office Report (Doc. No. 66-2); Defendant's body camera video (and accompanying still shots); the Department of Public Safety property inventory and laboratory results; NMS laboratory toxicology report; Decedent's autopsy report; and the expert report of John T. Vance (Doc. No. 66-3).

## IV.     Plaintiff's Summary Judgment Evidence

Plaintiff filed a response in opposition to Defendant's motion for summary judgment and submitted the following evidence: expert report of Mark A. Pezzano (Doc. No. 68-1); deposition

of Defendant Shane Iversen (Doc. No. 68-2); dash camera video; body camera video; report of Brian Hemanti (Doc. No. 68-5); snapshots from dashcam (Doc. No. 68-6); snapshots from bodycam (Doc. No. 68-7).

V. **Dash Camera Video**

While the parties have provided evidence which will be discussed herein, the dashcam video provides the clearest picture of what occurred during the stop in question. Therefore, the video is briefly summarized below.

In the early morning hours of September 14, 2022, Defendant Shane Iversen, a then-Rusk County Sheriff's Deputy, witnessed a vehicle proceeding through a four-way intersection. (Doc. No. 68-3, at 1:08.) Defendant initiated his lights and sirens and proceeded to perform a traffic stop on the vehicle. *Id.* at 2:17. The vehicle was driven by Decedent, Timothy Randall, a twenty-nine-year-old resident of Henderson, Texas.

After approaching the vehicle, Defendant identified himself and informed Decedent that he pulled him over because "you blew that stop sign back there." *Id.* at 3:00. Decedent responded, "No I didn't . . . I came to a complete stop at that stop sign." *Id.* at 3:04. The two briefly disputed whether Decedent had come to a complete stop until Defendant ordered Decedent out of the car. *Id.* at 3:11. Decedent exited the vehicle and Defendant turned him around. *Id.* at 3:30. Defendant instructed Decedent, who was now facing away from Defendant with his hands on the vehicle, to "keep your hands out of your pockets." *Id.* at 3:32. Defendant began performing a body search of Decedent and inserted his hands down into the front of Decedent's pants. *Id.* at 3:40. Then, Defendant grabbed Decedent's right wrist and ordered him to "put your hands behind your back." *Id.* at 3:42. Decedent responded, "I don't have anything on me officer" and continued to resist putting his hands behind his back. *Id.* at 3:44.

4

Standing in the same position with both hands in the air, Decedent pleads with Defendant, "Officer, please, can you tell me what I'm under arrest for, please—" *Id.* at 3:50. Without giving any more commands, Defendant, with both arms wrapped around Decedent, throws him down onto the pavement. *Id.* at 3:52. Now on his hands and knees with Defendant on his back, Decedent attempts to stand up, but before he can do so, Defendant gets to his feet and throws Decedent behind him again, sending Decedent onto his back several feet away. *Id.* at 3:58. Defendant immediately pulls his gun out of its holster and points it at Decedent. *Id.* at 3:59. Unaware of this, through momentum, Decedent rolls onto his feet and faces Defendant with both hands in the air, palms open and empty. *Id.* at 3:59. The next moment, Decedent attempts to flee in the opposite direction, but Defendant simultaneously yells "get down" and fires a single shot from his gun, striking Decedent in his right-side chest area. *Id.* at 4:01.

Decedent screams and continues to flee down the road. *Id.* at 4:07. Defendant attempts to use his radio and slowly begins to approach Decedent's direction. *Id.* at 4:25–4:35. By the time Defendant gets to Decedent, Decedent is lying immobile and face down on the pavement, still within view of Defendant's patrol car camera. *Id.* at 4:45. Defendant asks, "Dude, you okay?" *Id.* at 4:46. There was no response. *Id.* At 5:05, Defendant informed dispatch that he needed an ambulance and to "call everybody" because a shooting occurred. *Id.* at 5:04. After moving his patrol car closer, Defendant reinspected Decedent's body and returned to his car to retrieve his first aid kit. *Id.* at 7:15. Defendant rolled the body over and said, "Come on, stay with me buddy" and "Don't do this man." *Id.* at 7:39; 8:20.

Defendant continued to apply first aid to Decedent's body for the next several minutes until another officer arrived at the scene. *Id.* at 12:40. Minutes later, Defendant reports to another officer,

5

"It was a f*****g meth pipe man." *Id.* at 16:20. Defendant then makes a call to another officer and states, "I just smoked a dude." *Id.* at 17:45.

## LEGAL STANDARD

A motion for summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). The Supreme Court has interpreted the plain language of Rule 56 as mandating "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting *Celotex*, 477 U.S. at 323–25). A fact is material if it might affect the outcome of the suit under the governing law. *Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999). Issues of material fact are "genuine" only if they require resolution by a trier of fact and if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Merritt-Campbell, Inc.*, 164 F.3d at 961. If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little*, 37 F.3d at 1075.

If the movant meets this burden, Rule 56 requires the opposing party to go beyond the

pleadings and to show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *EEOC v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1180 (5th Cir. 1996); *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1046–47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by argument, conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a mere scintilla of evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585 (1986); *Wallace*, 80 F.3d at 1047; *Little*, 37 F.3d at 1075.

When ruling on a motion for summary judgment, the court is required to view all justifiable inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *Merritt-Campbell, Inc.*, 164 F.3d at 961. However, the court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Wash. Cap. Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as modified*, 70 F.3d 26 (5th Cir. 1995). Unless there is sufficient evidence for a reasonable jury to return a verdict in the opposing party's favor, there is no genuine issue for trial, and summary judgment must be granted. *Celotex*, 477 U.S. at 322–23; *Anderson*, 477 U.S. at 249–51; *Tex. Instruments*, 100 F.3d at 1179.

**DISCUSSION**

Defendant moves for summary judgment on the defense of qualified immunity on Plaintiff's claim for excessive use of force. (Doc. No. 65.) Plaintiff has filed a response (Doc. No. 68) to which Defendant has filed a reply (Doc. No. 69), and Plaintiff has filed a sur-reply (Doc. No. 70).

I.  **Qualified Immunity**

The doctrine of "qualified immunity" protects government officials from "liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 800 (1982). The qualified immunity inquiry determines whether a plaintiff has shown "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al–Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow*, 457 U.S. at 818). The court has "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

An additional consideration exists in the analysis of a qualified immunity defense on a motion for summary judgment. Once a defendant invokes qualified immunity, "the burden shifts to the plaintiff to demonstrate the inapplicability of the defense." *McCreary v. Richardson*, 738 F.3d 651, 655 (5th Cir. 2013) (internal citation omitted). Thus, although the court "draws all factual inferences in favor of the non-movant, . . . once the issue of qualified immunity is raised, the non-movant (i.e. the plaintiff in this case) bears the burden of rebutting the defense." *See Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005) ("[w]e do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs."); *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) ("the plaintiff bears the burden of negating qualified immunity . . . ."). "The plaintiff can defeat summary judgment by rebutting the qualified immunity defense as a matter of law or by raising a genuine fact dispute that is material to the issue of immunity." *Johnson v. Eggebrecht*, No. 9:14-CV-144, 2015 WL 9703791, at *4 (E.D. Tex. Dec. 28, 2015), *report and recommendation adopted*, No. 9:14-CV-144, 2016 WL 165091 (E.D. Tex. Jan. 14, 2016) (citing *Trent v. Wade*, 776 F.3d 368, 376

(5th Cir. 2015)). "[S]ummary judgment should be denied if the plaintiff's version of the facts would permit a finding that the official is not entitled to qualified immunity." *Id.* (citing *Lytle v. Bexar Cnty.*, 560 F.3d 404, 418 (5th Cir. 2009)).

### a. Alleged Constitutional Violations

As discussed, Plaintiff alleges constitutional violations against Defendant for excessive use of force, unlawful detention, and false arrest. (Doc. No. 62.) Defendant argues that Plaintiff cannot demonstrate the violation of a constitutional right, citing the standard for excessive use of force. (Doc. No. 65, at 18–20.) Specifically, Defendant argues that Decedent posed an immediate threat to his safety because he resisted his commands, overpowered him, and chose to run towards Defendant while he was in a compromised position on the ground. *Id.* at 19–20. Defendant makes no argument on the unlawful detention or false arrest claims in his summary judgment motion. Defendant has not cited any caselaw or standard to acknowledge Plaintiff's claims for unlawful detention and instead proceeds directly with an argument on the use of force. (Doc. No. 65.) Therefore, what has been presented to the court as challenged on grounds of qualified immunity is the use of force claim. The court will not *sua sponte* consider the other claims except to the extent that they impact the use of force claim, as discussed herein.

"The Fourth Amendment guarantees the right to be free from unreasonable searches and seizures." *Peterson v. City of Ft. Worth*, 588 F.3d 834, 844 (5th Cir. 2009). Specifically, it protects the right to be free from excessive force during a seizure. *Joseph on behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 322 (5th Cir. 2020) (citing *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012)); *see also Tucker v. City of Shreveport*, 998 F.3d 165, 171 (5th Cir. 2021) ("[f]or purposes of liability under 42 U.S.C. § 1983, excessive force claims arising from an arrest or investigatory stop invoke the protection provided by the Fourth Amendment of the United States

9

Constitution against 'unreasonable seizure.'"). Although an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it, *Graham v. Connor*, 490 U.S. 386, 396 (1989), a violation of this right occurs when a seized person suffers an injury which results directly and only from a clearly excessive and objectively unreasonable use of force. *Joseph*, 981 F.3d at 322; *see also Windham v. Harris Cnty.*, 875 F.3d 229, 242 (5th Cir. 2017).

"To prevail on an excessive force claim, a plaintiff must show '(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable.'" *Windham*, 875 F.3d at 242 (quoting *Hamilton v. Kindred*, 845 F.3d 659, 662 (5th Cir. 2017)). Determining whether force was excessive or unreasonable is a necessarily fact-intensive and case-specific inquiry, and the test for reasonableness is not capable of precise definition or mechanical application. *Joseph*, 981 F.3d at 322. The analysis "requires a careful balancing of the intrusion upon the individual's interests with the countervailing governmental interests at stake." *Tucker*, 998 F.3d at 171.

Here, there is no dispute as to injury as Plaintiff's son, Decedent, died as a result of Sergeant Iversen's actions during the routine traffic stop. (Doc. No. 66-2, at 55–60.) The disputed issues remain to be whether the use of deadly force was excessive to the need, and whether it was objectively unreasonable.

Under the Fourth Amendment, an officer's right to arrest or detain necessarily encompasses the right to use "some degree of physical coercion or threat" to enforce it. *Graham*, 490 U.S. at 396. But claims of excessive force necessarily "depend[] on the facts and circumstances of each particular case." *Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012). The amount of force an officer can use depends on (1) the severity of the crime at issue, (2) whether the suspect poses a

threat to officer safety, and (3) whether the suspect attempts to resist arrest or flee. *Bush v. Strain*, 513 F.3d 492 (5th Cir. 2008) (citing *Graham*, 490 U.S. at 396). The reasonableness of an officer's conduct is viewed objectively without reference to the subjective intent or motivation that underlies the officer's conduct. *Id.* at 397. The court looks at the facts and circumstances "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. Similarly, the court must account for the difficult and often split-second decisions that police officers must make in carrying out their duties. *Id.* at 396–97.

Here, Defendant argues that Decedent had committed the crimes of: "traffic violation," "possession of an open container of alcohol," "resisting arrest or detention," "driving while intoxicated possession of drug paraphernalia," "possession of methamphetamine," and "assault of a peace officer." (Doc. No. 65, at 19.) Plaintiff disputes these contentions. Plaintiff's expert points out that Defendant was over 1,100 feet from the intersection at the time Decedent's vehicle crossed through the intersection and that Defendant could not see the stop line or Decedent's actions at the stop line. (Doc. No. 68-1, at 9–10.) Indeed, the dashcam video itself makes it quite difficult to understand how Defendant could have possibly seen Decedent run the stop sign. The report of investigation by the Texas Rangers indicated that Defendant could not see the entire intersection, but that he was familiar enough with the area and the intersection to interpret his observations as a vehicle disregarding a stop sign. (Doc. No. 68-5, at 16.)[1] The evidence therefore calls into question whether Decedent had in fact committed the minor traffic offense of not fully stopping at a stop sign. Even assuming that such a traffic violation did occur, that violation, along with

---

[1] As discussed above, the court does not consider this evidence as it relates to whether there was reasonable suspicion for the stop. That issue simply was not raised in the initial motion for summary judgment and the court need not consider arguments raised for the first time in a reply brief. *Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010) ("Arguments raised for the first time in a reply brief are generally waived."). Further, the court does not find any reason to refuse to consider the report in the context of summary judgment. *See Luman v. Diaz*, No. CV H- 19-4920, 2022 WL 4001234, at *8 (S.D. Tex. Sept. 1, 2022) (overruling objection to reliance on reliance on a Texas Rangers Report at summary judgment where it could be presented in an admissible form at trial).

Defendant's additional cited violations of possession of an open container of alcohol," "driving while intoxicated possession of drug paraphernalia," "possession of methamphetamine," would plainly not justify the use of deadly force.

As to Defendant's contention that the crime of assault of a peace officer was committed, this contention must be disregarded. Under Texas law, a person commits assault on a public servant if a person (1) intentionally, knowingly, or recklessly (2) causes bodily injury to another; and (3) the offense is committed against a person the actor knows is a public servant while the public servant is lawfully discharging an official duty. *See* Tex. Penal Code. Ann. § 22.01(a)(1), (b)(1); *see also Ingram v. Lumpkin*, 2021 WL 1535415, at *4 (W.D. Tex. Apr. 19, 2021) (highlighting the elements of this offense). Here, there is no evidence that Decedent caused any bodily injury to Defendant Iversen.

Further, the evidence shows that Decedent's resistance to the arrest was at first verbal questioning, followed by contact with Defendant Iversen only through Defendant's escalating use of force. When Defendant informed Decedent about the nature of the stop, Decedent verbally contested that he did not run the stop sign. (Doc. No. 68-3, at 3:04.) Nevertheless, Decedent complied with Defendant's command to exit the vehicle, turn around, and to place his hands on the vehicle. *Id.* at 3:32. Decedent did seemingly resist placing his hands behind his back when commanded; however, Decedent's further "resistance" was only attempting to stand up after Defendant threw him onto the pavement. *Id.* at 3:50–3:58. Decedent had no further opportunity to "resist" as Defendant threw Decedent onto the ground again, drew his pistol, and shot Decedent while the Decedent's hands were raised, and he was attempting to flee in the opposite direction. *Id.* at 3:57–4:00. The time that elapsed between when Defendant tossed Decedent to the ground the second time and when Defendant fired his gun was approximately three seconds. *Id.* at 3:57–

4:00. As such, the court cannot conclude that the evidence shows that Decedent was resisting arrest in such a manner that it would justify the use of deadly force.

Defendant further argues that Decedent was "charging" Defendant at the moment of the use of deadly force, while Defendant was in a "compromised" position on the ground. (Doc. No. 65, at 19–20.) Plaintiff contests this argument, pointing out that Decedent was "running away from Defendant Iversen with his palms extended toward Defendant Iversen showing that he did not have a weapon." (Doc. No. 68, at 5.) As stated, this is a case where video evidence exists demonstrating objectively what happened at the moment that deadly force was employed. The court "assign[s] greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene." *Carnaby v. City of Hous.*, 636 F.3d 183, 187 (5th Cir. 2011). The following still shots of the video from the dashcam show that in the moment deadly force was applied, Defendant Iversen was on his knees on the ground with his gun drawn and Decedent, though facing in Defendant's direction, had his hands up and palms open, showing nothing in his hands:





(Doc. No. 68-6, at 5, 6).

The split seconds that follow show that indeed Decedent was turning to run away:



14





(Doc. No. 68-6, at 7–9).

There is no dispute in this case that Decedent was unarmed as no weapon was retrieved from his body or from his vehicle upon conducting inventory after the use of deadly force. (Doc. No. 66-2, at 45–46.) Further, there is no dispute that Defendant never saw a weapon on Decedent

15

or in his vehicle. *See* Doc. No. 68-2, Deposition of Defendant Iversen 293: 12–15 ("I never saw a weapon."). Defendant's justification for the use of deadly force with his weapon, was that he thought that Decedent was armed based upon feeling what he believed to be a weapon in Decedent's waistband when he patted him down prior to the shooting. *Id.* at 293: 16–21. The weapon turned out to be a meth pipe that was inside of two soft eyeglasses containers. (Doc. No. 66-2, at 61.) Even to the extent that the presence of a meth pipe, which was felt by Defendant upon pat down of Decedent, could justify the deadly use of force by *believing* that Decedent was armed, plain questions of credibility arise based upon the known facts, which the court cannot resolve on summary judgment. On the one hand, Plaintiff's expert states it would have been objectively impossible for Defendant to think that, given the size and texture of the cases covering a meth pipe, the meth pipe was a weapon. (Doc. No. 68-1, at 15.) On the other hand, Defendant Iversen and Defendant's expert state that it was reasonably believed by Defendant that the meth pipe was a weapon. (Doc. No. 68-2, at 293: 16–21; Doc. No. 66-3.) This is a genuine dispute of material fact.

Based on the evidence presented, a reasonable juror could find that the use of deadly force was excessive as the crimes at issue were minor non-violent crimes (*e.g.*, traffic violation, open container, possession), Decedent's resistance was not physical towards Defendant, and Decedent was unarmed with his hands empty and open while Defendant Iversen shot him from a kneeling position as Decedent was turning to run away. In other words, a reasonable juror could conclude that Defendant Iversen's actions were objectively unreasonable. Further, questions of credibility arise with respect to whether a meth pipe felt during a pat down could reasonably be believed to have been a small handgun (*compare* 66-2, at 61 to 66-4); *see Lampkin v. City of Nacogdoches*, 7 F.3d 430, 436 (5th Cir. 1993) ("[t]o the extent that credibility questions exist . . . a fact-finder will

16

be necessary."). For these reasons, the court finds that Plaintiff has provided enough evidence to show that a constitutional violation occurred based upon the use of deadly force to survive summary judgment.

### b. Clearly Established Law

Nonetheless, Defendant may still be entitled to qualified immunity if Plaintiff cannot show that Defendant's actions violated clearly established law. *Ashcroft*, 563 U.S. at 735. "It has long been clearly established that, absent any other justification for the use of force, it is unreasonable for a police officer to use deadly force against a fleeing [suspect] who does not pose a sufficient threat of harm to the officer or others." *Lytle v. Bexar Cnty.*, 560 F.3d 404, 418 (5th Cir. 2009) (citing *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)); *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 488 (5th Cir. 2001). Relying on these cases, Plaintiff argues that it was clearly established that Defendant violated Decedent's constitutional rights when he shot and killed Decedent without probable cause to believe that Decedent posed an immediate threat of serious physical harm. (Doc. No. 68, at 11–15).

In the seminal case of *Tennessee v. Garner*, the decedent was inside a house that was believed to have been being broken into. *Garner*, 471 U.S. at 1. When officers arrived, decedent fled into the yard near the chain-link fence. *Id.* The officer in question agreed that he thought the decedent was unarmed, but when he called out instruct decedent to "halt," decedent began to climb the fence at which point the officer shot him in the back of the head. *Id.* The Court explained, "[w]here the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Id.* at 11. The Court went on to state that "if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened

17

infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given." *Id.* at 11–12.

While the facts are not identical, the law clearly establishes that Defendant Iversen would have been on notice that his use of deadly force would be unconstitutional unless he had probable cause to believe the deadly force used was necessary because Decedent presented an equally opposing threat to Defendant that justified the use of deadly force. Here, Decedent never threatened Defendant with a weapon nor was he involved in a crime that inflicted serious physical harm to Defendant or anyone else. Even if the evidence could establish these facts, which it does not, Defendant's warning was insufficient. Though Defendant Iversen gave a warning to "get down," that warning was made at 3:59, the exact same second in which Decedent was fatally shot. Such a warning is effectively null because it affords no time for compliance. Moreover, as discussed above, Decedent was in the process of turning to flee as the gunshot was fired. Defendant was on his knees with his gun drawn. Because, indisputably, Decedent's arms were open and his hands empty with no weapon drawn when the shot was fired from a kneeling position, the evidence calls into question whether Defendant had probable cause to believe that Decedent posed a threat of serious harm at the time he used deadly force. As such, Defendant is not entitled to qualified immunity on summary judgment.

## CONCLUSION

For the reasons stated herein, the court **RECOMMENDS** that Defendant's motion for summary judgment on qualified immunity (Doc. No. 65) be **DENIED**.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report. A party's failure to file written objections to the findings, conclusions, and recommendations

contained in this Report within 14 days after service shall bar that party from *de novo* review by the district judge of those findings, conclusions, and recommendations and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc), *superseded on other grounds by statute*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 22nd day of January, 2025.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE