IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| WENDY TIPPITT, as the administrator of the Estate of Timothy Michael Randall, *Plaintiff*, | § § § § | |
| VS. | § § | CIVIL ACTION NO. 6:23cv515-JDK |
| SERGEANT SHANE IVERSEN, *Defendant.* | § § § | JURY DEMANDED |

**DEFENDANT SHANE IVERSEN'S OBJECTIONS TO REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Defendant Sgt. Shane Iversen ("Defendant"), in the above entitled and numbered cause of action, and files this his Objections to Report and Recommendation of United States Magistrate Judge, and, in support thereof, would show unto the Court as follows:

**I.
INTRODUCTION**

Plaintiff Wendy Tippitt brings this lawsuit alleging claims of excessive use of force, unlawful detention and false arrest under 42 U.S.C. § 1983. Docket No. 62. Defendant Sgt. Shane Iversen asserted the affirmative defense of qualified immunity. Docket No. 63. The Court referred this matter to the Honorable John D. Love for all purposes allowed by law. Docket No. 13.

On December 16, 2024, Defendant Sgt. Iversen filed his Motion for Summary Judgment on the Issue of Qualified Immunity. Docket No. 65. Plaintiff filed her response on January 6, 2025 and Sgt. Iversen filed a reply on January 14, 2025. Docket Nos. 68, 69. On January 22, 2025, the Honorable John D. Love entered a Report and Recommendation ("R&R") in which he recommended

denying Sgt. Iversen's qualified immunity motion for summary judgment. Docket No. 71. Sgt. Iversen respectfully asserts the following objections to the Report and Recommendation.

## II.
## OBJECTIONS

A party who timely files specific, written objections to a magistrate judge's report and recommendation is entitled to a *de novo* determination of those findings or recommendations to which the party specifically objects. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2)-(3). Frivolous, conclusive or general objections need not be considered by the district court. *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982) (en banc).

A.  **OBJECTION I:** **The R&R does not address Plaintiff's burden to show Sgt. Iversen acted in a plainly incompetent manner, or that he knowingly violated the law, as required by the qualified immunity defense.**

The second, third and fourth sentences of Fifth Circuit Pattern Jury Instruction No. 10.3, give the most concrete instruction of how to define qualified immunity. Those three sentences state as follows:

> Qualified immunity exists to give government officials breathing room to make reasonable but mistaken judgments about open legal questions. Qualified immunity provides protection from liability for all but the plainly incompetent government officers, or those who knowingly violate the law. It is Plaintiff's burden to prove by a preponderance of the evidence that qualified immunity does not apply in this case. *Id.*; *Jimenez v. Wood Cty.*, 621 F.3d 372, 378 (5th Cir. 2010) (observing that burden is on plaintiff once defendant raises defense).

Fifth Circuit District Judges Association, Pattern Jury Instructions, Civil Cases (2020), Instruction No. 10.3; *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (qualified immunity provides protection from liability for all but the plainly incompetent government officers, or those who knowingly violate the law).

Often, litigants and Courts choose to provide an analysis using less than concrete terms, which often creates ambiguity in a qualified immunity analysis. Using the most clear and unambiguous terms of Fifth Circuit Pattern Jury Charge No. 10.3 and all the supporting case law, Plaintiff in the case at bar has not asserted, nor has Plaintiff met her burden to prove, that Sgt. Iversen was either plainly incompetent or knowingly violated the law. *See Anderson v. Creighton*, 107 U.S. 635, 639, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987); *see* Docket No. 71.

The R&R is silent as to whether Plaintiff met her burden to show Sgt. Iversen was plainly incompetent or knowingly violated the law. *See id.* Plaintiff's response is equally silent on this essential issue. *See* Docket No. 68. In order to overcome Sgt. Iversen's qualified immunity, Plaintiff must show one or the other – either that Sgt. Iversen was plainly incompetent or knowingly violated the law. Plaintiff simply did not even attempt to satisfy her burden.

Even if Plaintiff had attempted to satisfy her burden, she could not have done so because no evidence exists that Sgt. Iversen acted in a plainly incompetent manner, or that he knowingly violated the law. Here, the in-car video shows Randall was facing in a direction away from Sgt. Iversen, and then turned directly towards Sgt. Iversen. The men were in very close proximity at the time.[1] Sgt. Iversen was alone, on his knees, winded, in the dark, and interacting in a split-second with a suspect that had not followed his commands. Using deadly force in the precise moment the suspect turned towards the officer, especially when the officer reasonably believed the suspect had

---

[1] In this type of close interaction, it is axiomatic that a suspect can be on top of an officer before the officer has time to react. Law enforcement officers are trained on the "21 Foot Rule," which instructs: if a subject has a weapon, is within 21 feet of the officer and actively takes off towards the officer, the officer can shoot the subject in the heart and he can still cause harm or kill the officer with whatever weapon he has in his hand. *Winkley v. Hancock Cnty., Mississippi*, 730 F. Supp. 3d 296, 302 (S.D. Miss. 2024). As such, an officer has to make a split-second decision. Sgt. Iversen made the split-second decision at the moment Randall turned towards him, and before he continued his turn and ran away from Sgt. Iversen. *See* Exhibit B.5 at RC0819-53.

a gun in his waistband, can hardly be described as plainly incompetent. And, again, Plaintiff has not alleged Sgt. Iversen acted in a plainly incompetent manner, as is her burden.

Further, absolutely no evidence exists that Sgt. Iversen knowingly violated the law. Under Supreme Court and Fifth Circuit precedent, an officer cannot accidentally or negligently violate the law and be held liable for the split-second decision he was forced to make. *Harmon v. City of Arlington*, 16 F.4th 1159, 1166 (5th Cir. 2021) (citing *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019)); *Kisela v. Hughes*, 584 U.S. 100, 104, 138 S. Ct. 1148, 1153, 200 L. Ed. 2d 449 (2018) (per curiam); *see Plumhoff v. Rickard*, 572 U.S. 765, 774, 134 S.Ct. 2012, 188 L.Ed.2d 1056 (2014). In order to survive summary judgment here, Plaintiff must have demonstrated Sgt. Iversen acted with knowledge that the use of deadly force, in the split-second he had to decide whether such force was necessary, was a violation of the law. Plaintiff did not do so, therefore, Sgt. Iversen cannot be held liable.

B. **OBJECTION II:** **The law cited in the R&R is not factually similar enough to the situation Sgt. Iversen faced to have placed the lawfulness of his use of deadly force beyond debate.**

The R&R concludes *Tennessee v. Garner*, and its progeny, clearly established the law applicable to the facts of this case. 471 U.S. 1, 11 (1985); *see* Docket No. 71 at 17-19 (citing *Lytle v. Bexar Cnty.*, 560 F.3d 404, 418 (5th Cir. 2009); *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 488 (5th Cir. 2001)). The R&R correctly quotes these cases as stating

> It has long been clearly established that, absent any other justification for the use of force, it is unreasonable for a police officer to use deadly force against a fleeing [suspect] who does not pose a sufficient threat of harm to the officer or others.

Docket No. 71 at 17. However, the R&R did not "frame the constitutional question with specificity and granularity." *Morrow*, 917 F.3d at 874-75. Couching the constitutional right at issue in this

case in terms of a "fleeing suspect" who poses insufficient harm, is too general. Following the Fifth Circuit's logic in *Ramirez v. Escajeda*, it is one thing to ask whether police may use deadly force as a suspect is running away from an officer and is no longer in a position to be a threat to the officer or others. *See* 44 F.4th 287, 294 (5th Cir. 2022); c*f. Ramirez v. Martinez*, 716 F.3d 369, 372 (5th Cir. 2013). It is quite another to ask whether an officer may use deadly force on a suspect who had the opportunity to run away, but instead turned towards the officer, or a suspect that runs away from the officer only *after* the officer fires his weapon, or a suspect who may or may not have a weapon, who does not respond to the officer's commands—all when the officer interacts with the suspect rapidly, alone and in the dark.[2]

1. **Relevant Law**

"The clearly established inquiry is demanding, especially in claims for excessive force." *Escajeda*, 44 F.4th at 292 (citing *Harmon*, 16 F.4th at 1167). Courts must "frame the constitutional question with specificity and granularity," *Morrow*, 917 F.3d at 874–75, rather than "at a high level of generality," *Ashcroft v. al-Kidd*, 563 U.S. 731, 742, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011).

An officer can be stripped of qualified immunity only when "the violative nature of the *particular* conduct is clearly established ... in light of the specific context of the case, not as a broad general proposition." *Mullenix*, 577 U.S. at 12. In sum, controlling precedent must have placed the question "beyond debate," with "the right's contours ... sufficiently definite that any reasonable

---

[2] A series of Supreme Court cases have held that *Garner* does not state "clearly established law" governing the use of deadly force other than in *Garner's* precise factual context, the shooting of an unarmed burglary suspect fleeing away from an officer. *See Mullenix v. Luna*, 577 U.S. 7, 136 S. Ct. 305, 193 L.Ed.2d 255 (2015) (per curiam); *Brosseau v. Haugen*, 543 U.S. 194, 199, 125 S. Ct. 596, 599, 160 L.Ed.2d 583 (2004); *Kisela*, 584 U.S. at 100; *White v. Pauly*, 580 U.S. 73, 137 S. Ct. 548, 552, 196 L.Ed.2d 463 (2017) (per curiam).

official in the [officer's] shoes would have understood that he was violating it." *Plumhoff*, 572 U.S. at 778–79 (quoting *al-Kidd*, 563 U.S. at 741).

2. **The Facts in *Tennessee v. Garner* are not Similar Enough**

a. <u>FACTUAL DIFFERENCE</u>: **Randall did not Flee, but Turned Towards Iversen**

*Tennessee v. Garner*, and its progeny, discuss circumstances in which deadly force is used while a suspect is fleeing. *Garner*, 471 U.S. at 11; *Lytle*, 560 F.3d at 418; *Bazan ex rel. Bazan*, 246 F.3d at 488. In *Garner*, the suspect ran out of a house, across a backyard and began climbing a fence, all in the opposite direction of the pursuing officer and his partner who was calling dispatch. *Garner*, 471 U.S. at 3. Here, on the other hand, Randall was in very close proximity to Sgt. Iversen, Randall turned towards Sgt. Iversen and was face-to-face with him, all while Sgt. Iversen was alone, out-of-breath and on his knees. Exhibits A, B.1, B.2, C.[3]

Before facing off with Sgt. Iversen, Randall got up from the ground facing in a direction away from Sgt. Iversen. Exhibit B.1 at 0:03:58; Exhibit B.5 at RC0819-26 (Randall's feet are pointed away from Sgt. Iversen as Randall stands up); Exhibit C. The facts of *Garner* would be aligned with a scenario in which Randall ran in a direction away from Sgt. Iversen. However, that is not what occurred in this case. Here, Randall changed direction and turned towards Sgt. Iversen. Exhibit B.1 at 0:03:58; Exhibit B.5 at RC0827-52 (Randall's feet turning towards Sgt. Iversen); Exhibit C. At that split-second, Sgt. Iversen was forced to make a decision – either use deadly force, or wait and see if Randall physically attacked or used a weapon. Obviously, it is too late for Sgt. Iversen if he chooses the "wait and see" option and Randall attacks or uses a weapon. Having to make such an impossible decision is exactly why officers are entitled to qualified immunity. Sgt.

---

[3] Defendant's citations are to the exhibits attached to his Motion for Summary Judgment, Docket No. 65.

Iversen pulled the trigger and, only then, did Randall change direction again and run away from Sgt. Iversen.  Exhibit B.1 at 0:03:59; Exhibit B.5 at RC0853 (muzzle flash and Randall turning to his left); Exhibit C.

Randall turning to face Sgt. Iversen instead of running away from the officer, as the suspect did in *Garner*, is a material difference in the facts between the two cases.  As such, it is impossible to frame the constitutional right at issue in this case, with specificity and granularity as required, by using the right at issue in the *Garner* case.  The *Garner* case does not set forth the constitutionality of the use of deadly force when a suspect does not run away, but turns towards an officer while in close quarters.  Neither Plaintiff nor the R&R cite to any case that clearly establishes the law in the circumstances faced by Sgt. Iversen.  *See Salazar v. Molina*, 37 F.4th 278, 286 (5th Cir. 2022) ("By citing no factually similar Supreme Court cases, [the plaintiffs] effectively concede[ ] that Supreme Court precedent offers [them] no help.").

### b. FACTUAL DIFFERENCE:  Randall was Facing Sgt. Iversen When Shot

In *Garner*, officers shot the suspect in the back of the head as he was climbing a fence in a direction opposite of the officers.  *Garner*, 471 U.S. at 3-4.  In contrast, here, Randall was shot in his chest as he was facing and moving towards Sgt. Iversen.  Exhibit B.1 at 0:03:58; Exhibit B.6; Exhibit C.  Randall's wound path was "front to back, right to left and downward."  Exhibit B.6.

### c. FACTUAL DIFFERENCE: Sgt. Iversen Believed Randall was Armed

In *Garner*, the officer who fired his weapon testified he thought the suspect was unarmed. *Garner*, 471 U.S. at 3-4.  In contrast, here, Sgt. Iversen testified he believed Randall was armed with a North American Arms pistol.  Exhibit A at 92:10-21, 93:7-20, 93:24-94:10, 200:6-15, 202:1-12, 19-25, 242:21-25, 285:20-286:4, 286:13-21, 293:12-21; Exhibit B.2 at 23:6-17; Exhibit D.  The in-

car video also demonstrates Sgt. Iversen believed Randall secreted a weapon in his waistband. Exhibit B.1 at 0:03:29 (Randall's furtive movement into his waistband), 0:03:31 (Iversen pulling Randall's hand out of his waistband and placing it on the top of the car), 0:03:34 (Iversen reacting to feeling a hard cylindrical item through Randall's pants), 0:03:40 (Iversen moving with urgency after feeling an item inside Randall's waistband). The fact that the item turned out to be a meth pipe instead of a pistol is of no consequence to the qualified immunity analysis because what matters is what Sgt. Iversen knew when he shot Randall. *See, e.g., White*, 580 U.S. at 76-77 ("Because this case concerns the defense of qualified immunity ... the Court considers only the facts that were knowable to the defendant officers."); *Kingsley v. Hendrickson*, 576 U.S. 389, 399, 135 S. Ct. 2466, 2474, 192 L.Ed.2d 416 (2015) (stressing that "a court must judge the reasonableness of the force used from the perspective and with the knowledge of the defendant officer").

### d. <u>FACTUAL DIFFERENCE</u>: Sgt. Iversen was Alone and Compromised

In *Garner*, there were two officers present at the scene when deadly force was used. *Garner*, 471 U.S. at 3. In contract, here, Sgt. Iversen was by himself and did not know how quickly another deputy could get to the scene. Exhibit B.2 at 23:21. Further, in *Garner*, the suspect and officers had not already had physical contact before deadly force was used. *Garner*, 471 U.S. at 3-4. In this case, Randall actively resisted detention and arrest, fighting off Sgt. Iversen's attempts to secure him in handcuffs. Exhibit B.1, Exhibit C. Unlike the officers in *Garner*, Randall's actions left Sgt. Iversen on the ground and out-of-breath when Sgt. Iversen had to make the decision whether to use deadly force.

*Garner* is not factually similar enough to the situation Sgt. Iversen faced to have placed the lawfulness of his use of deadly force beyond debate. *See Escajeda* at 44 F.4th at 293.

WHEREFORE, PREMISES CONSIDERED, Defendant Sgt. Shane Iversen respectfully submits his Objections to the Report and Recommendation (Docket No. 71) addressing his Motion for Summary Judgment on the Issue of Qualified Immunity.

> Respectfully submitted,
>
> **FLOWERS DAVIS, P.L.L.C.**
> 1021 ESE Loop 323, Suite 200
> Tyler, Texas 75701
> (903) 534-8063
> (903) 534-1650 Facsimile
>
> _____
> **ROBERT S. DAVIS**
> State Bar No. 05544200
> rsd@flowersdavis.com
> Lead Attorney
>
> **LEE I. CORREA**
> State Bar. No. 24072049
> lic@flowersdavis.com
>
> **ATTORNEYS FOR DEFENDANT**
> **SGT. SHANE IVERSEN**

## CERTIFICATE OF SERVICE

I hereby certify and state that the above and foregoing instrument was served upon all counsel of record in the above entitled and numbered cause on February 5, 2025 in the following manner:

  X    Via ECF

_____
**LEE I. CORREA**