IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| WENDY TIPPITT, as the administrator of the ESTATE OF TIMOTHY MICHAEL RANDALL,<br><br>    Plaintiff,<br><br>v.<br><br>SERGEANT SHANE IVERSEN,<br><br>    Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ Case No. 6:23-cv-515-JDK-JDL<br>§<br>§<br>§<br>§<br>§<br>§ |

**ORDER ADOPTING REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Wendy Tippitt, as the administrator of the Estate of Timothy Michael Randall, sued Defendant Shane Iversen, on November 9, 2023, asserting claims for excessive use of force, unlawful detention, and false arrest pursuant to 42 U.S.C. § 1983. Docket No. 1. The case was referred to United States Magistrate Judge John D. Love for findings of fact, conclusions of law, and recommendations for the disposition of the case. Docket No. 13. Now before the Court is Iversen's motion for summary judgment based on qualified immunity. Docket No. 65.

On January 22, 2025, Judge Love issued a Report and Recommendation recommending that Iversen's motion for summary judgment on qualified immunity be denied. Docket No. 71. Iversen timely filed objections to the Report. Docket No. 72. Tippitt filed a response. Docket No. 73.

1

As explained below, the Court overrules Iversen's objections and adopts the Report and Recommendation. Iversen's motion for summary judgment on qualified immunity is **DENIED**.

## I.

Where a party timely objects to the Report, the Court reviews the objected-to findings and conclusions of the Magistrate Judge de novo. 28 U.S.C. § 636(b)(1). In conducting a de novo review, the Court examines the entire record and makes an independent assessment under the law. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc), *superseded on other grounds by statute*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days). The Court reviews unobjected-to portions of the Magistrate Judge's Report for clear error or abuse of discretion and reviews the legal conclusions to determine whether they are contrary to law. *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989) (holding that, if no objections to a Magistrate Judge's Report are filed, the standard of review is "clearly erroneous, abuse of discretion and contrary to law").

## II.

Iversen asserts two objections: (1) the Report does not address Tippitt's burden to show that Iversen either knowingly violated the law or was plainly incompetent; and (2) the Report cites law that is not factually similar enough to have placed the lawfulness of Iversen's use of deadly force beyond debate. Docket No. 72. The Court addresses each in turn.

## A.

In his first objection, Iversen cites the Fifth Circuit pattern jury instructions, which state that qualified immunity provides protection "for all but the plainly incompetent" or "those who knowingly violate the law." 5th Cir. PJI § 10.3. Iversen claims the Report is silent as to whether Tippitt met her burden of showing that Iversen was plainly incompetent or knowingly violated the law. Docket No. 72 at 3. In addition to cherry-picking the pattern jury instructions, *see* 5th Cir. PJI § 10.3 (foreclosing qualified immunity if a reasonable officer with the same information could not have believed his actions were lawful under clearly established law at the time), the objection mischaracterizes the Report.

The Report directly addresses whether Tippitt met her burden of showing that Iversen's conduct amounted to a knowing violation of the Fourth Amendment. In doing so, the Report properly considered the *Graham* factors and the evidence presented (including video evidence). Docket No. 71 at 10–17. The Fourth Amendment protects the people from unreasonable seizures. U.S. CONST. amend. IV. As the Report notes, the reasonableness inquiry considers "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citing *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985)); *see also Barnes v. Felix*, 605 U.S. __, 2025 WL 1401083, at *4 (May 15, 2025) (rejecting the "moment-of-the-threat" test and reaffirming that an officer's reasonableness turns on the "totality of the circumstances"). The Report

3

properly analyzed the *Graham* factors and concluded that Tippitt presented sufficient evidence for a jury to conclude that Iversen knowingly violated the law.

In doing so, the Report considered the following undisputed facts: (1) Randall was never armed with a weapon; (2) Iversen never observed a weapon on Randall; and (3) Randall's hands were open and empty as he was (4) turning to get away from Iversen when the shot was fired. *Id.* Iversen's objection relies predominantly on his subjective belief that Randall was carrying a small gun—which turned out to be a "meth pipe." But the reasonableness of an officer's conduct is viewed objectively "without reference to the subjective intent or motivation that underlies the officer's conduct." *Lytle v. Bexar County*, 560 F.3d 404, 411 (5th Cir. 2009) (quoting *Graham*, 490 U.S. at 397); *see also Graham*, 490 U.S. at 397 ("An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional."). And here, there is competing evidence regarding whether a reasonable officer would have mistakenly believed the meth pipe to be a gun. *Compare* Docket No. 66-3 at 11 (opining that detecting an item in Randall's pants would "reasonably confirm the suspicion" that the item "could potentially harm" Iversen), *with* Docket No. 68-1 at 15 (opining that believing the meth pipe was a gun under these circumstances is "objectively impossible").

Further, Iversen continues to dispute the facts as shown in the video evidence. *See Carnaby v. City of Hous.*, 636 F.3d 183, 187 (5th Cir. 2011) (citing *Scott v. Harris*, 550 U.S. 372, 381 (2007)) (assigning "greater weight . . . to the facts evident from

4

video recordings taken at the scene"). Iversen argues that the split second where Randall turned toward Iversen while getting up from the ground justified the use of deadly force. Docket No. 72 at 3. But Iversen's split-second reasoning argument is inapplicable here. For one, Randall was never armed, and the video shows his palms open, extended, and empty, even if Randall did face the officer at the brief moment he was getting up from the ground. Moreover, Iversen was already on his knees with his gun drawn and pointed at Randall when Randall was getting up. A jury could therefore find that Iversen saw Randall was unarmed when Iversen shot him. *See Poole v. City of Shreveport*, 13 F.4th 420, 425 (5th Cir. 2021) (noting that "[w]hether the suspect is armed is often the key factor in determining if a threat to the officer justifies the use of deadly force"). Indeed, Iversen's reliance on the "21 Foot Rule" shows the error of his argument. The officer training guideline states that "if a subject has a weapon, is within 21 feet of the officer and actively takes off towards the officer, the officer can shoot the subject in the heart and he can still cause harm or kill the officer with whatever weapon he has in hand." Docket No. 72 at 3 n.1. But this rule by its terms applies to a subject who *has a weapon in hand*, and the parties agree that Randall never had a weapon in his hand, Iversen never saw a weapon, and in fact, Randall was unarmed.

In light of this evidence, the Report correctly concluded that summary judgment was improper. Tippitt presented sufficient evidence that Iversen violated Randall's constitutional rights based on the use of deadly force, and a jury should decide any factual disputes in the record. *Id.* at 17. The jury, moreover, will be

5

instructed on the exact parameters of qualified immunity from the pattern jury instructions to fully resolve the issue of qualified immunity here.

Iversen's first objection is overruled.

### B.

Iversen next objects to the Report's reliance on *Tennessee v. Garner*, 471 U.S. 1 (1985), in its discussion of clearly established law. Docket No. 72 at 4. The Report also relied on *Lytle v. Bexar County*, 560 F.3d 404, 418 (5th Cir. 2009), and *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 488 (5th Cir. 2001), in applying *Garner*. Docket No. 71 at 17–19. Iversen argues that these cases are factually distinguishable because they discuss circumstances where deadly force was used while a suspect was fleeing. Docket No. 72 at 6. And here, Iversen argues, Randall was facing Iversen when he was shot. *Id.* at 6–8.

The Report acknowledges that *Garner*'s facts are not identical to the instant case. But the Report explains that *Garner* nonetheless establishes that "[w]here the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." 471 U.S. at 11. The Report then compares the facts of *Garner* to the evidence in this case, which similarly shows that Randall posed no immediate threat of harm to Iversen at the moment deadly force was employed. Docket No. 71 at 17–18. While courts must "frame the constitutional question with specificity and granularity, *Morrow v. Meachum*, 917 F.3d 870, 874–75 (5th Cir. 2019), "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the

6

specific conduct in question, even though the very action in question has not been previously held unlawful." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (cleaned up).

Iversen's quarrel is not with the clearly established law, but with the facts of his case. Iversen points out that Randall was facing Iversen for a split second the moment he was shot. True, but the video shows that Randall, disoriented, was getting himself up off the ground and turning to run away in the moment Iversen shot him. *See Poole v. City of Shreveport*, 13 F.4th 420, 424 (5th Cir. 2021) ("Common sense, and the law, tells us that a suspect is less of a threat when he is turning or moving away from the officer.") (collecting cases). And as the Court has noted, in this moment, Randall's hands were open, palms up, and empty. Iversen, moreover, admitted in his deposition that he "never saw a weapon." *See* Docket No. 68-2, Iversen Dep. 293:14; *Poole*, 13 F.4th at 424 (noting "the manifest unreasonableness of shooting an individual the officer can see is unarmed and not aggressive"); *id.* at 425 (finding a violation of clearly established law when an officer "shoots a visibly unarmed suspect who is moving away from everyone present at the scene") (collecting cases). Iversen continues to argue that he was alone and compromised. Although Iversen was alone, compromised he was not. Again, the video evidence shows that Iversen was kneeling with his gun drawn when he shot and killed Randall who was unarmed and turning to get away. A jury therefore could reasonably conclude that Iversen knew he lacked probable cause to believe deadly force was necessary and violated clearly established law as set forth in *Garner*. *See* 471 U.S. at 11; *Poole*, 13 F.4th at 424–26.

Iversen's second objection is overruled.

### III.

Having conducted a de novo review of the record in this case and the Magistrate Judge's Report, the Court has determined that the Magistrate Judge's Report is correct, and Iversen's objections are without merit. Accordingly, the Court **OVERRULES** Iversen's objections (Docket No. 72) and **ADOPTS** the Report of the Magistrate Judge (Docket No. 71) as the opinion of the Court. Iversen's motion for summary judgment (Docket No. 65) is **DENIED**.

So **ORDERED** and **SIGNED** this **27th** day of **May, 2025.**

_____
JEREMY D. KERNODLE
UNITED STATES DISTRICT JUDGE